

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

September 14, 1965

Honorable Franklin L. Smith
County Attorney
Nueces County Courthouse
Corpus Christi, Texas

Opinion No. C-506

Re: Whether Section 4 of
Article 1937 as provided
for by Section 1 of House
Bill 125, Acts 59th Legis-
lature, 1965, Regular
Session, ch. 456, p. 941,
is unconstitutional by
virtue of Section 51 or
Section 52 of Article III
of the Constitution of
Texas.

Dear Mr. Smith:

You have requested the opinion of this office upon the following questions:

"1. Is Section 4 of House Bill 125, 59th Legislature, constitutional insofar as it requires that the premiums for the liability insurance protecting the county clerk be paid out of county funds?

"2. If such provision is unconstitutional and the county is precluded from paying this premium, must the county clerk purchase such insurance for the protection of himself and his deputies?"

Section 4 of Article 1937, as provided for by Section 1 of House Bill 125, Acts 59th Legislature, 1965, Regular Session, ch. 456, p. 941, provides that:

"Each county clerk shall obtain an errors and omissions insurance policy, if the same be available, covering the county clerk and the deputy or deputies of the county clerk against liabilities incurred through errors and omissions in the performance of the official duties of said county clerk and the deputy or deputies of said

-2387-

county clerk; with the amount of the policy being
in an amount equal to a maximum amount of fees
collected in any year during the previous term of
office immediately preceding the term of office
for which said insurance policy is to be obtained,
but in no event shall the amount of the policy be
for less than Ten Thousand Dollars ($10,000). The
premiums for said insurance shall be paid out of
the funds of the county by the Commissioners Court
of said county." (Emphasis added).

We are of the opinion that Section 4 of Article 1937,
as provided for by Section 1 of House Bill 125, providing for
the obtaining of an errors and omissions insurance policy covering
the County Clerk and his deputies, is in violation of Section 51
and Section 52 of Article III of the Constitution of Texas. Sec-
tion 51 of Article III of the Constitution of Texas provides in
part that:

"The Legislature shall have no power to
make any grant or authorize the making of any
grant of public moneys to any individual. . . ."

Section 52 of Article III of the Constitution of Texas
provides in part that:

"The Legislature shall have no power to
authorize any county, city, town or other political
corporation or subdivision of the State to lend
its credit or to grant public money or thing of
value in aid of, or to any individual. . . ."

The rule of law in Texas is well settled that a county
is not liable for the tortious or negligent acts of its officers,
agents or employees. Heigel v. Wichita County, 19 S.W. 562 (Tex.
Sup.Ct. 1892); Floria v. Galveston County, 55 S.W. 540 (Tex.Civ.
App. 1900); Nussbaum v. Bell County, 97 Tex. 86, 76 S.W. 430
(1903); Bryan v. Liberty County, 299 S.W. 303 (Tex.Civ.App. 1927);
Jones County v. Moore, 4 S.W.2d 289 (Tex.Civ.App. 1928, error ref.);
Angelina County v. Bond, 16 S.W.2d 338 (Tex.Civ.App. 1929). At-
torney General's Opinions Nos. 0-5315 (1943), 0-353 (1939), and
0-1922 (1940). In addition, it was stated by the Supreme Court
of Texas in the case of State v. City of Austin, 160 Tex. 348,
331 S.W.2d 737 (1960) that:

". . .the use of public money to pay a
claim predicated on facts which generate no
state liability constitutes a gift or donation
in violation of our Constitution."

Hon. Franklin L. Smith, page 3 (C- 506)

While the foregoing case involved the State rather than a
county, the above-quoted rule of law would be equally applicable
to a county in view of the language contained in Section 51 and
Section 52 of Article III of the Constitution of Texas.

As it would be in violation of Section 51 and Section
52 of Article III of the Constitution of Texas for a county to
pay a claim of a person for a loss suffered by such person for
some act of the County Clerk or his deputies in the performance
of their official duties, it would likewise be a violation of
the same constitutional provisions for a county to pay the
premiums on an insurance policy which had as its purpose the
paying of a claim predicated on facts which generated no county
liability. In this same connection it was stated in Attorney
General's Opinion No. O-1922 (1940) that:

". . .It is fundamental that the county
would have no authority to insure against a
non-existent liability."

In the event the purpose of the insurance policy pro-
vided for in Section 4 of Article 1937, as provided for by
Section 1 of House Bill 125, was to afford the County Clerk and
his deputies a form of protection from personal monetary loss
for some act of theirs which resulted in their personal liability
to some member of the public, then the payment of the premiums
of the insurance policy by the county would clearly constitute
a gift or donation of public moneys to the County Clerk and his
deputies in violation of Section 51 and Section 52 of Article
III of the Constitution of Texas. See Attorney General's Opinion
No. O-353 (1939).

As we have held that Section 51 and Section 52 of
Article III of the Constitution prohibits the county from paying
the premiums on the insurance policy required by Section 4 of
Article 1937, as provided for by Section 1 of House Bill 125,
it becomes necessary to pass upon the question of whether the
County Clerk is nevertheless required to obtain such errors
and omissions policy.

In this connection, we are of the opinion that because
the obtaining of this insurance policy is an official duty of
the County Clerk and the method or means of performing this duty,
the payment of the premiums upon the policy, is prohibited by the
Constitution, then the requirement of obtaining the insurance
policy must necessarily fall also.

In view of the result we have reached in connection
with the questions posed concerning Section 4 of Article 1937,

as provided for by Section 1 of House Bill 125, it should be noted that Section 3 of House Bill 125 provides that:

> "If any provision or provisions of this Act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are declared to be severable."

By virtue of the foregoing provision and the fact that Sections 1, 2, and 3 of Article 1937, as provided for by Section 1 of House Bill 125, deal with the giving of a bond by the County Clerk, an entirely different subject matter which is independent of the provisions of Section 4 of Article 1937, we are of the opinion that Section 4 of Article 1937, as provided for by Section 1 of House Bill 125, is severable and its unconstitutionality does not invalidate the remaining provisions of House Bill 125.

## S U M M A R Y

The payment of premiums by a county on the errors and omissions insurance policy required by the provisions of Section 4 of Article 1937, as provided for by Section 1 of House Bill 125, Acts 59th Legislature, 1965, Regular Session, ch. 456, p. 941, violates Section 51 and Section 52 of Article III of the Constitution of Texas.

The payment of the premiums by a county on the foregoing errors and omissions insurance policy being in violation of the Constitution of Texas, it is unnecessary for the County Clerk to obtain such insurance policy.

The invalidity of Section 4 of Article 1937, as provided for by House Bill 125, does not invalidate the remaining provisions contained in House Bill 125.

Very truly yours,

WAGGONER CARR
Attorney General

By: Pat Bailey

Pat Bailey
Assistant

PB:mkh

-2390-

APPROVED:
OPINION COMMITTEE

W. O. Shultz, Chairman
John Reeves
Roy Johnson
Wade Anderson
John Banks

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright