

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

February 7, 1961

Honorable Jimmy Morris
County Attorney
Navarro County
Corsicana, Texas

Opinion No. WW-992

Re:  Whether a County be liable
in damages occasioned by
overflow (or damages to)
lands not condemned for
flood control purposes, if
the county condemns certain
other lands in connection
with its flood control proj-
ect, and related questions.

Dear Mr. Morris:

Your request for an opinion reads as follows:

"Navarro County and The Navarro-Hill Soil
Conservation District have entered into a flood
control contract, and tax money is maintaining cer-
tain dams in the district by authority of an elec-
tion held in Navarro County under Art. 7048a,
R. C. S.

"The Conservation District and certain land
owners feel that there is a need to condemn land
in a particular area in order to construct a dam
or make additions to a present existing dam.  Their
contention is that by so doing, certain lands will
not be flooded.  With one exception, all the land
owners are willing to give their land (for conser-
vation purposes).  Therefore, with reference to the
one exception, his land must be condemned or the
project abandoned.  We are satisfied that Navarro
County has authority to condemn.  Art. 1581e;
16 T. J., Sec. 44, pg. 314.

"Question No. 1:  Should Navarro County pro-
ceed with condemnation, in years thereafter could
the county be held liable for overflow (or damages
therefrom) to other lands not condemned?

"Question No. 2:  If question number 1 is
answered in the affirmative, from what funds would
the county be liable?

"Question No. 3:   If question number 1 is answered in the affirmative, would the land owners have to prove negligence?

"Question No. 4:   If question number 1 is answered in the affirmative, what effect, if any, would the question of liability have due to the Navarro County merely paying for all maintenance of the dams?

"Question No. 5:   As condemnation is brought in the name of the State of Texas (by authority of Art. 6674n), would the State also be liable?"

We shall discuss your five questions in numerical order.

"Question No. 1:   Should Navarro County proceed with condemnation, in years thereafter could the county be held liable for overflow (or damages therefrom) to other lands not condemned?"

We cannot give you a categorical answer to this question without some additional facts.  We need to know whether the "other lands," to which you refer, (a) belong to others than the owners of the property condemned, or, (b) do such lands constitute the "remainder" of the lands of the condemnee?  We shall discuss each alternative.  (a) Should the lands belong to others, the county would be subject to a suit for damages caused by the overflow or backwater from the dam.  You cite several cases which are apropos.  We shall give a synopsis of the holdings.

TARRANT COUNTY WATER CONTROL DISTRICT v. FOWLER, 175 S.W.2d 694.  This is a trespass to try title case with an alternative plea for damages, due to the backing of water onto plaintiff's property.  Covering plaintiff's property with water was caused by the construction of Eagle Mountain Dam across the west fork of the Trinity River.  The Court held that this was a "taking" under Article 1, Section 17 of the Constitution, entitling owner to compensation.  The governmental subdivision which constructed the dam, that is, Tarrant County, was held liable.

CITY OF AUSTIN v. HOWARD, 158 S.W.2d 556.  The City of Austin constructed a disposal plant.  The suit was for damages based upon a claim that the city had negligently constructed, in one of the flood channels where the water was accustomed to flow when the river overflowed, the obstruction which diverted the flood waters onto plaintiff's land.  City contended

that a part of the damages was due to the construction of Montopolis Bridge and approaches by the State Highway Department. The city requested the submission of issues on this phase of the case which were refused and on this ground and certain other grounds the case was reversed and remanded. However, the principle is approved that the creation of an obstruction which diverts water onto another person's land gives rise to a cause of action.

HARRIS COUNTY v. GERHART, 283 S.W. 139. This case is a suit for damages against Harris County caused by the construction and improvement of a public road causing water to back up onto another person's property. The Court held that liability existed regardless of negligence and predicated its holding upon Article 1, Section 17 of the Constitution providing that:

"No person's property shall be taken, damaged, or destroyed or applied to public use without adequate compensation."

The flooding of land was held to be a "taking" within the meaning of the Constitutional provision.

(b) Should the "other lands" belong to the condemnee, he should recover everything in the original condemnation suit, that is, he should recover the market value of the dam site (and whatever other land, if any, that is actually condemned) and, in addition, the damages to his remaining land. State v. Carpenter, 89 S.W.2d 194 (Comm.App.). The damages to the remainder are determined by the difference in the market value "before the taking" and the market value "after the taking." To prove the market value "after the taking," anything can be shown which might reasonably affect such value, as, for instance, the probability of overflow. These principles are set forth in Article 3265, V.C.S., are discussed in the Carpenter case, supra, and in many other cases.

Claimed damages to the remainder must be asserted in the condemnation suit. State v. Brewer, 169 S.W.2d 468 (Sup.Ct. 1943). In this connection, however, it should be pointed out that an easement for the entire lake and potential underwater land could be taken along with the dam site in the original condemnation proceeding.

Where part of a tract of land is condemned for street purposes, the owner cannot recover in a subsequent proceeding for damages to remainder which ought to have been reasonably

Hon. Jimmy Morris, page 4 (WW-992)

foreseen and presented in the condemnation. City of Lagrange v.
Pieralt, 175 Tex. 23, 175 S.W.2d 243.

"Question No. 2: If question number 1 is
answered in the affirmative, from what funds would
the county be liable?"

Navarro County could use its permanent improvement and
flood control funds to pay on such judgments; however, the
County could not limit its liability to such funds as the
general fund would also be liable. White v. Calaway, 282
S.W. 642 (Civ.App. 1926, error ref.).

"Question No. 3: If question number 1 is
answered in the affirmative, would the land owners
have to prove negligence?"

Such liability is not predicated upon negligence but upon
a "taking" under Art. 1, Section 17 of the Texas Constitution.
Harris County v. Gerhart, 283 S.W. 139; City of Austin v.
Howard, 158 S.W.2d 556; Tarrant County, etc. v. Fowler, 175
S.W.2d 694.

"Question No. 4: If question number 1 is
answered in the affirmative, what effect, if any,
would the question of liability have due to the
Navarro County merely paying for all maintenance
of the dams?"

This question seems to contradict Question No. 1, be-
cause No. 1 presupposes that Navarro County is the condemnor.
Doubtless your question means would the mere paying for main-
tenance render the County liable for damages? Our answer is
"No."

"Question No. 5: As condemnation is brought
in the name of the State of Texas (by authority of
Art. 6674n), would the State also be liable?"

Article 6674n is not applicable to the condemnation in
question but Article 1581e, V.C.S. gives counties the right
of condemnation for flood control purposes. No liability,
whatever, exists against the State of Texas.

S U M M A R Y

Should Navarro County condemn land
and build a dam, it would be liable in a
damage suit to owners of other lands for
overflow or backwater on said lands; such

damages as might accrue on the remainder of the land of condemnees should be calculated as a part of the damages in the condemnation suit.

The general fund would be liable.

Negligence need not be shown since liability arises under Art. 1, Sec. 17 of the Constitution by reason of the appropriation or taking of the land.

The mere payment for maintenance does not render the County liable for damages.

In no event does any liability accrue against the State.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: W. Ray Scruggs
Assistant

WRS:jf

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

_____


_____


REVIEWED FOR THE ATTORNEY GENERAL

BY: Leonard Passmore